**J. R. WESTERFIELD, Appellant,**

**v.**

**O & B COAL, INC., d/b/a Bartlett & O'Bryan Fertilizer Company, Appellee.**

Court of Appeals of Kentucky.

Nov. 3, 1967.

Paul E. Bugay, Bugay, Cooper & Hayden, Owensboro, for appellant.

R. Scott Plain, Wilson & Wilson, Owensboro, for appellee.

CULLEN, Commissioner.

Appellee fertilizer company sued appellant Westerfield, a farmer, on an account totalling $5,547.77 for fertilizer sold to Westerfield in 1963. Westerfield admitted the account but counterclaimed for damages to his corn crops alleged to have occurred from 1959 through 1963 as a result of alleged inferior quality of fertilizer purchased from appellee during those years.

The trial court dismissed the counterclaim but, inexplicably, allowed the jury to give Westerfield a credit of $539.89 if the jury believed that there was a quality deficiency in one kind of fertilizer sold to Westerfield in 1963. The jury allowed the credit, whereupon judgment was entered against Westerfield for the amount of the account less the credit—$5,007.88. Westerfield has appealed, claiming error in the dismissal of his counterclaim, and the fertilizer company has cross-appealed, contending that no credit should have been allowed.

Westerfield operated a large farm and his annual purchases of fertilizers ran into thousands of dollars. Prior to 1959 he had been purchasing fertilizers from a source other than the appellee company. His evidence was that in 1958, using the fertilizers from those sources, his corn crop on 440 acres ran 100 bushels per acre. In 1959 he commenced buying from the appellee company and he continued to buy from them through 1963. However, his corn yield dropped to an average of 62 bushels per acre, under what he testified were similar growing conditions as concerned weather, rainfall, etc. One of the principal fertilizers he used was known as "5–20–20 muriate." In the summer of 1963 he experimented in one field, using the appellee's fertilizer in some rows of corn and fertilizer purchased from another supplier in other rows. He testified that the latter rows produced at a rate of 20 bushels per acre more than those on which the appellee's fertilizer had been used. Finally, late in 1963, Westerfield had a test run by the Agricultural Experiment Station of the University of Kentucky on a 1000-pound bulk purchase of 5–20–20 muriate from the appellee. It tested only 77.6 percent of guaranteed value.

The foregoing facts constitute the basis of Westerfield's claim that the appellee had been supplying him over the five-year period with defective fertilizer (i. e., fertilizer below the label standards) which caused his corn crops to be less than they would have been had the fertilizer met the label standards. The question on Westerfield's appeal is whether the evidence of these facts was enough to have warranted submission of the claim to the jury.

The only direct proof of defective fertilizer consisted of the evidence of the test of 1,000 pounds of 5–20–20 muriate in 1963. Other facts of which there was direct proof were: (1) The appellant's corn crops in the years in which he used the appellee's fertilizers were less than in 1958 when he used another supplier's fertilizers; (2) in an experiment run in 1963 rows on which another supplier's fertilizer had been used produced more corn than rows on which appellee's fertilizer had been used; (3) another farmer's corn crop increased by 30 bushels per acre in 1961 when he changed from appellee's fertilizer, which he had used for three previous years, to that of another supplier. From these facts, appellant argues, inferences can be drawn that all of the fertilizers purchased from the appellee from 1959 through 1963 were of inferior quality and that this was responsible for the low yield of the corn crops.

The court is of the opinion that this case is controlled by the decision in American Agricultural Chemical Co. v. McKinney, 173 Ky. 820, 191 S.W. 647. It was there held that under the statutes, KRS 250.360 to 250.480, the fertilizer seller's "whole guaranty is contained in its label;" that unless the fertilizer is shown not to conform to the label guaranty, evidence as to crop failures is not competent; and that failure of the fertilizer to conform to the label guaranty can be established only by a test conducted in substantial compliance with KRS 250.440.

In the instant case the test of the 1,000-pound load of 5–20–20 muriate admittedly was not made in compliance with KRS 250.440, in that the sample was not taken in the presence of the seller or of substitute witnesses. Therefore, under the McKinney opinion, the test was not valid evidence that the fertilizer failed to

conform to the label guaranty. Hence the evidence of crop failures was not competent. Thus there was no valid evidence to support the counterclaim. Likewise there was no valid evidence to warrant a credit against the price of the muriate that was bought in 1963.

On the direct appeal the judgment is affirmed. On the cross-appeal the judgment is reversed with directions to enter judgment in favor of the plaintiff for the full amount sued for.

All concur except OSBORNE, J., who did not sit.